UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

KENNETH LAMONT              )
GALLOWAY-BEY,               )
                           )
                           )
            Plaintiff,      )
                           )
v.                         )        No.:   1:23-cv-194-TAV-SKL
                           )
CHRISTOPHER GOTT, Magistrate Judge, )
EAST RIDGE POLICE DEPARTMENT, )
CHILD PROTECTIVE SERVICES, and )
CLEOPATRA MCELROY,          )
                           )
                           )
            Defendants.     )

## MEMORANDUM OPINION

Before the Court are motions to dismiss by defendants Child Protective Services ("CPS"), East Ridge Police Department, and Magistrate Judge Christopher Gott [Docs. 7, 9, 11]. Plaintiff has not responded to the motions. Since the time for doing so has expired, the motions are now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). Also before the Court are plaintiff's "Motion for a 6 Amendment Trial" [Doc. 13], and Magistrate Judge Gott's motion to stay the proceedings [Doc. 16]. For the reasons explained below, the motions to dismiss [Docs. 7, 9, 11] will be **GRANTED**, and all claims against defendants CPS, East Ridge Police Department, and Magistrate Gott will be **DISMISSED**. Additionally, all claims against defendant Cleopatra McElroy will be **DISMISSED** for lack of subject-matter jurisdiction, and plaintiff's motion [Doc. 13] and Magistrate Judge Gott's motion [Doc. 16] will be **DENIED as moot**. This civil action will be **DISMISSED**.

## I. Factual Allegations

Plaintiff's pro se complaint, styled as a "Complaint for Violation of Civil Rights" under 42 U.S.C. § 1983, is, respectfully, difficult for the Court to comprehend [Doc. 1]. It appears that the allegations therein stem from a child custody dispute between plaintiff and McElroy, the mother of plaintiff's two minor children. Plaintiff believed that, pursuant to a joint custody order from the Hamilton County Juvenile Court, he and McElroy exercised custodial time at their discretion and alternated parenting time on a weekly basis [*Id.* at 1; Doc. 1-1, p. 1].

On June 24, 2023, plaintiff noticed a "nasty" scar on his 2-year-old son's arm [Doc. 1, p. 2]. McElroy told plaintiff that their son fell, but when plaintiff asked his son how he got the scar, his son replied "mama." On June 28, 2023, plaintiff took his children to the Hamilton County Juvenile Court and showed the scar to a family assistance representative [*Id.*]. The same day, plaintiff filed a petition for sole custody in which he stated that his son's scar came from an "unknown origin," that McElroy threatened to remove the children from the state, and that plaintiff did not want to involve the Tennessee Department of Children's Services [Doc. 1-1, p. 1].

On July 17, 2023, plaintiff and McElroy appeared before Magistrate Judge Gott [Doc. 1, p. 2]. During the hearing, plaintiff alleges that Magistrate Judge Gott did not discuss the scar or McElroy's threats to flee the state with the children [*Id.*]. Instead, Magistrate Judge Gott ordered the parties to participate in parenting and mediation classes [*Id.*; Doc. 1-1, pp. 2–5]. Plaintiff alleges that Magistrate Judge Gott "FRAUDULENTLY slipped [him] an agreement," which was deceitful and unethical [Doc. 1, p. 2]. His

complaint further asserts, "[I]f the Magistrates are insinuating that it was not court ordered then why is he ordering classes for a fee, using our children as a Threat. RACKETEEING and EXTORTION" [*Id.*].

In August 2023, McElroy allegedly left the state with the couple's children, which appears to form the basis of plaintiff's kidnapping claim against her [*Id.* at 2–3]. On August 18, plaintiff returned to Hamilton County Juvenile Court to inform Magistrate Judge Gott that McElroy left the state with the children [*Id.* at 2]. There, a family assistance representative informed plaintiff that there was nothing that could be done, that plaintiff needed to find an attorney, and that an arrest warrant would not be issued for McElroy. Plaintiff argues that Magistrate Judge Gott had a "sworn civic duty" to issue the arrest warrant and intentionally failed to do so. Plaintiff claims that he was "basically told" that if he could not come up with $5,000 to hire an attorney, he would not see his children again. He further accuses Magistrate Judge Gott of violating the "United States Code of Law" because he has committed serious crimes [*Id.*].

Plaintiff also alleges that he called the CPS hotline to file a report and was given a referral number [*Id.*]. When plaintiff checked the status of the report online, he was informed that his case "did not meet the criteria." These facts appear to form the basis of plaintiff's claims for "gender equality" and "neglect" against CPS [*Id.*].

Plaintiff also filed a police report with the East Ridge Police Department [*Id.*]. Attached to his complaint are two incident reports by an officer with the East Ridge Police Department [Doc. 1-1, pp. 6–7]. The reports state that an arrest warrant would be sought for McElroy's custodial interference. But no arrest warrant was issued [*Id.*]. Plaintiff

3

allegedly was informed by "Sergeant Chadwick" that his custody paperwork "was an agreement" and not court-ordered, and as a result, an arrest warrant was not issued [Doc. 1, p. 2]. Sergeant Chadwick also told plaintiff that he read the incident reports and believed there was probable cause to issue an arrest warrant for McElroy. Plaintiff's request that an amber alert be issued was also denied. These events appear to form the basis of plaintiff's claims for "dereliction of duty" and "gender inequality" against the East Ridge Police Department [*Id.*].

Plaintiff further complains that he is not enjoying the "Liberties-Equal Protection of the Law (Bill of Rights)," and alleges the following "crimes" were "committed" by defendants: dereliction of duty, gender inequality, fraud, racketeering and extortion, and kidnapping [*Id.*]. According to plaintiff, such "crimes are felonies and fall under federal jurisdiction" [*Id.* at 3].

His complaint seeks a variety of damages from defendants. As to Magistrate Judge Gott, who is being sued in his individual capacity, plaintiff asks for punitive and compensatory damages and his removal from the bench [*Id.*]. As to East Ridge Police Department and CPS, each of which is being sued in its official capacity, plaintiff requests punitive and compensatory damages. Plaintiff also requests that McElroy be arrested under a "federal warrant" and returned to Chattanooga, Tennessee to "answer to the criminal charges of Kidnapping, Breach of Agreement." He further asks for compensatory and punitive damages [*Id.*].

On September 29, 2023, CPS filed a motion to dismiss [Doc. 7] for lack of subject-matter jurisdiction, insufficient service of process, and failure to state a claim upon

which relief can be granted under Federal Rules of Civil Procedure 12(b)(1), (b)(5), and (b)(6), respectively. On October 3, 2023, the City of East Ridge, on behalf of the East Ridge Police Department, filed a motion to dismiss [Doc. 9] alleging that East Ridge Police Department is not a suable entity under 42 U.S.C. § 1983 and plaintiff's complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). Finally, Magistrate Judge Gott filed a motion to dismiss on October 11, 2023 [Doc. 11], for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted under Rules 12(b)(1) and (b)(6), respectively. Plaintiff did not respond to any of the motions to dismiss but instead filed a "Motion for a 6 Amendment Trial" [Doc. 13].

## II. Standard of Review

Rule 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, a complaint filed in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. "'[A] formulaic recitation of the elements of a cause of action will not do'"; nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation"; nor will "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

5

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A pro se complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). Further, district courts "have no obligation to act as counsel or paralegal" to pro se litigants and are not "required to create" a pro se litigant's claim for him. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).

### A. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and other categories of cases not at issue here. 5 U.S. CONST. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress also has conferred federal courts diversity jurisdiction over civil actions in which

6

the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. As a result, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Further, subject-matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (providing that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. Factual attacks, on the other hand, challenge the factual existence of subject-matter jurisdiction, irrespective of what is or might be alleged in the pleadings. *Id.*

## B. Rule 12(b)(6) Standard

In deciding a Rule 12(b)(6) motion, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] be a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must

7

construe the complaint in a light most favorable to plaintiff[], accept all well-pled factual allegations as true, and determine whether plaintiff[] undoubtedly can prove no set of facts in support of those allegations that would entitle [him] to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

III. **Analysis of the Motions to Dismiss**

A. **Claims Against CPS**

CPS argues that plaintiff's claims against it should be dismissed for lack of subject-matter jurisdiction because it is entitled to sovereign immunity [Doc. 8, pp. 3–4]. Specifically, it contends that "CPS," a program administered by the Tennessee Department of Children's Services, has sovereign immunity from suit [*Id.*].

The Eleventh Amendment "is a true jurisdictional bar that . . . once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). An assertion of Eleventh Amendment sovereign immunity constitutes a factual attack. *Dunn v. Spivey*, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009) (citing *Giorgadze v. Tennessee Tech. Ctr.*, No. 2:06-CV-264, 2007 WL 2327034, *2 (E.D. Tenn. Aug. 10, 2007) ). "[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). To determine whether CPS is protected by sovereign immunity, the Court must answer two questions. "First, the Court must ask whether the defendants are agencies of the state to which sovereign immunity applies? Second, if immunity does apply, has

8

this immunity been waived?" *See Giorgadze*, 2007 WL 2327034, at *2 (quoting *Boyd v. Tennessee State Univ.*, 848 F. Supp. 111, 113 (M.D. Tenn. 1994).

CPS has been recognized as a state agency covered by the State of Tennessee's grant of sovereign immunity. *See, e.g.*, *Petty v. Tennessee Dep't of Children's Servs.*, No. 3:19-CV-01085, 2021 WL 396689, at *4 (M.D. Tenn. Feb. 3, 2021), *report and recommendation adopted*, No. 3:19-CV-1085, 2021 WL 679423 (M.D. Tenn. Feb. 22, 2021) (citing *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) ("finding that 'the Tennessee Department of Children's Services' is 'the State' for purposes of the sovereign immunity analysis").

Thus, plaintiff cannot sue CPS unless the State of Tennessee or Congress has waived immunity, as the Eleventh Amendment prohibits suits for damages against a state and its agencies in federal court unless Congress has abrogated its immunity, or the state expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to § 1983 suits). And Congress has not abrogated immunity in the context of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (in passing § 1983, Congress had no intention of disturbing Eleventh Amendment immunity); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (noting § 1983 does not by clear and explicit language nor by its legislative history indicate intent to abrogate immunity).

9

Therefore, CPS is entitled to Eleventh Amendment immunity. *See Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997). Accordingly, plaintiff's § 1983 claims against CPS will be **DISMISSED**.

### B. Claims Against Magistrate Judge Gott

Plaintiff's complaint appears to assert the following claims against Magistrate Judge Gott: dereliction of duty, gender inequality, racketeering, extortion, and fraud [Doc. 1, pp. 2–3]. The conduct underlying these claims appears to include the order referring plaintiff and McElroy to mediation and parenting classes and the failure to issue a warrant for McElroy's arrest when she left the state with the children [*Id.*]. Magistrate Judge Gott alleges that the Court lacks subject-matter jurisdiction under the so-called "domestic relations exception," the *Rooker-Feldman* doctrine, and the *Younger* abstention doctrine [Doc. 12, pp. 5–10]. He also contends that he is entitled to judicial immunity [*Id.* at 10–13].

It appears the Court lacks jurisdiction over some of plaintiff's claims against Magistrate Judge Gott. In light of the ambiguity and imprecision in his complaint, however, it may be the case that such jurisdictional doctrines do not bar all claims asserted against Magistrate Judge Gott. Regardless, all claims against Magistrate Judge Gott will be dismissed because he is entitled to absolute judicial immunity for the conduct alleged in the complaint. As a result, the Court will briefly discuss the relevant jurisdictional doctrines and then turn to judicial immunity.

### i.    Jurisdictional Doctrines

The domestic relations exception exempts from federal diversity jurisdiction "cases involving the issuance of a divorce, alimony, or child custody decree." *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)).  If the federal nature of a claim is "mere pretense," and the claim is "actually concerned with domestic relations issues," the Court lacks subject-matter jurisdiction. *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003).

The Sixth Circuit has clarified that this exception applies only to a narrow range of circumstances and "does not deprive federal courts of jurisdiction to adjudicate a claim . . . unless a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child custody decree." *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015) (quoting *Chevalier*, 803 F.3d at 797).  The ultimate inquiry in determining the applicability of this exception focuses on the remedy sought: "Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree." *Chevalier*, 803 F.3d at 797.

Here, to the extent plaintiff seeks to challenge or modify any state court order or judgment in his child custody dispute with McElroy in Hamilton County Juvenile Court, this Court is without jurisdiction over any such claims.  Peeling back the layers of the allegations in the complaint, in alleging that Magistrate Judge Gott violated his civil rights, plaintiff is essentially dissatisfied with and attacks the substance of Magistrate Judge Gott's decision to order mediation and parenting classes [Doc. 1, p. 2]  This action occurred after Magistrate Judge Gott considered plaintiff's petition for sole custody in the course of state

juvenile court proceedings [*Id.*].  As a result, it appears the substance of plaintiff's claims falls in the domestic relations exception.  *See Henson v. Burke*, No. CV 5:22-288, 2023 WL 3572839, at *2 (E.D. Ky. May 12, 2023) (concluding that the substance of the plaintiff's claims were domestic relations where the plaintiff was essentially attacking the substance of the underlying custody order).

Additionally, the *Younger* abstention doctrine "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings."  *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008).  In determining whether abstention is warranted, courts employ "a three-factor test."  *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019).  "If (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims," abstention may be invoked.  *Id.*

Magistrate Judge Gott argues that abstention is warranted because the proceedings in state juvenile court are ongoing, with the most recent hearing scheduled on November 6, 2023 [Doc. 12, p. 10].[1]  Such proceedings involve the custody of children, an important state interest.  *See Wyttenbach v. Utah Sup. Ct.*, No. 3:11-CV-136, 2012 WL 996600, at *2

---

[1] Magistrate Judge Gott also argues that the *Rooker-Feldman* doctrine applies.  Under this doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court, as only the United States Supreme Court has jurisdiction to correct state court judgments.  *Partridge v. State of Ohio*, 79 F. App'x 844, 846 (6th Cir. 2003).  For the doctrine to apply, the state proceedings must have concluded.  *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) ("[T]he *Rooker-Feldman* doctrine only applies to cases brought 'after the state proceedings have ended.'").  Since Magistrate Judge Gott acknowledges that state court proceedings are ongoing, it appears that *Rooker-Feldman* is not applicable here.

12

(E.D. Tenn. Mar. 23, 2012), *aff'd* (Apr. 5, 2013). Further, plaintiff has adequate opportunities to raise constitutional challenges in the state proceedings and may appeal any of those decisions in the Tennessee state court system, and ultimately to the United States Supreme Court. *See id.* With all three factors are present, and to the extent the complaint seeks injunctive or declaratory relief that may interfere with the ongoing state court proceedings, the Court finds abstention is appropriate over any such claims.

### ii. Judicial Immunity

Even assuming that the above jurisdictional doctrines do not completely bar plaintiff's claims against Magistrate Judge Gott, Magistrate Judge Gott is nonetheless entitled to absolute judicial immunity. "It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages. Immunity from a § 1983 suit for money damages is no exception." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (citations omitted). Judicial immunity is available even if the judge acts maliciously, corruptly, or in bad faith. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) ("State judges enjoy absolute immunity from liability under 42 U.S.C. § 1983 . . . even where a judge acts corruptly or with malice.") (internal citation omitted) (citing *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)). A judge is not immune, however, under two circumstances: (1) "for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity;" and (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citations omitted).

Neither exception applies here. The actions of which plaintiff complains occurred in Magistrate Judge Gott's judicial capacity in the course of a child custody dispute in state juvenile court and were not taken in the "complete absence of all jurisdiction" [Doc. 1, p. 2]. *See id.* Plaintiff first alleges that Magistrate Judge Gott's ordering of mediation and parenting classes was fraudulent and constituted racketeering and extortion [*Id.*; Doc. 1-1, pp. 4–5]. But such conduct is a "paradigmatic[ally] judicial act[ ]" entitling Magistrate Judge Gott to absolute immunity. *See Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994) (state judge's orders in child custody and visitation proceedings "affected the rights only of the individual plaintiffs in specific judicial proceedings" and thus were "paradigmatic judicial acts" entitling the judge to absolute judicial immunity).

Magistrate Judge Gott is also entitled to absolute immunity for any claims arising from his decision related to issuing (or not issuing) a warrant for McElroy's arrest. *See Moore v. State of Tennessee*, No. 3:03-CV-559, 2005 WL 1668365, at *3 (E.D. Tenn. July 18, 2005) ("[T]he failure to issue an arrest warrant [is] equivalent to the issuance of an arrest warrant. The issuance of an arrest warrant is a 'truly judicial act.'").

Finally, this Court lacks the authority to entertain plaintiff's request to remove Magistrate Judge Gott from the bench. *See Toutges v. McKaig*, No. 3:19-CV-352, 2019 WL 5865642, at *5 (E.D. Tenn. Nov. 8, 2019) ("As an overarching matter, the Court notes that it does not have legal authority to intervene in a pending state court action, compel a state court judge to rule differently, or remove a state court judge from a case.").

In light of the above, all claims against Magistrate Judge Gott will be **DISMISSED**.

14

### C. Claims against East Ridge Police Department and the City of East Ridge

#### i. Section 1983 Claims

It appears plaintiff's complaint attempts to state claims for "dereliction of duty" and "gender inequality" against East Ridge Police Department and potentially the City [Doc. 1, p. 2]. In its motion to dismiss, the City of East Ridge, on behalf of defendant East Ridge Police Department, first argues that the East Ridge Police Department is not a suable entity and that any claims against it must be dismissed [Doc. 10, p. 3].

As an initial matter, district courts in Tennessee have "frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases). As a result, plaintiff's § 1983 claims against East Ridge Police Department will be **DISMISSED**.

Next, the City argues, and the Court agrees, that the complaint fails to plausibly state a claim against the City [*Id.* at 4].

Section 1983's purpose is to guard against the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 325, 326 (1941)). It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  Plaintiffs must plead and prove two elements to state a cause of action: (1) that a person has deprived him of a federal right, and (2) that the person has done so under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Plaintiff appears to attempt to state a claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment, which commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  Generally, to prevail on a claim for violation of the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class or by burdening a fundamental right.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997)).  Alternatively, plaintiff could allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the allegations in the complaint are insufficient to state a claim for "gender inequality" against the City.  As an initial matter, the complaint does not allege that plaintiff is a member of a protected class, much less allege any facts that he experienced intentional and purposeful discrimination because of membership in a protected class.  *See Radvansky*, 395 F.3d at 312.  The complaint also does not allege with any detail that the City of East Ridge burdened any fundamental right belonging to plaintiff.  *See id.*  Further, the complaint does not suggest that plaintiff received different treatment from those similarly

16

situated to him.  *See Olech*, 528 U.S. at 564.  Accordingly, the complaint fails to allege facts that would plausibly demonstrate that the City violated plaintiff's rights under the Equal Protection Clause.

Further, once a constitutional deprivation is established, under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom.  *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)); *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456–57 (6th Cir. 2008)).  A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations.  *Burgess*, 735 F.3d at 478.

Even if plaintiff's complaint sufficiently alleges that the City of East Ridge violated his constitutional rights, it does not identify or describe any policies, procedures, practices, or customs relating to training; it does not identify any particular shortcomings in that training or how those shortcomings caused the alleged violations of plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put the City on notice of a problem.  *See Dalton v. Murfreesboro Police Dep't*, No. 3:18-CV-00402, 2018 WL 3438777, at *3 (M.D. Tenn. July 17, 2018).

Accordingly, the Court finds that the complaint does not contain sufficient allegations to state any § 1983 claim against the City and will be **DISMISSED**.

## D.    State Law Claims

Finally, to the extent the complaint attempts to allege state law claims of fraud, neglect, kidnapping, and dereliction of duty, and to the extent any such claims exist under Tennessee law and remain, those claims will be dismissed as to defendants CPS, Magistrate Judge Gott, East Ridge Police Department, and the City of East Ridge.  28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

*Id.*  The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ."  § 1367(c)(3).

Having dismissed plaintiff's federal claims against these defendants, the Court declines to exercise supplemental jurisdiction to hear any state law claims that may be set forth in the complaint.  *See Dalton*, 2018 WL 3438777, at *4.  As such, any state law claims that remain against these defendants are **DISMISSED.**

## IV.    Claims against McElroy

The Court *sua sponte* will address the remaining claims against McElroy, the only remaining defendant, who has not entered an appearance or otherwise filed any responsive pleadings in this matter.  Based on the Court's review of the record, it does not appear that

18

she has been served with process even though more than 90 days have passed since plaintiff initiated this action.[2]  Even assuming McElroy has been served with process, this Court concludes that it lacks jurisdiction over the claims asserted against her.

Plaintiff, although proceeding pro se in this matter, does not seek *in forma pauperis* status.   The Court's authority to utilize the screening requirements of 28 U.S.C. § 1915(e)(2) is limited to complaints filed *in forma pauperis*.  *Benson v. O'Brian*, 179 F.3d 1014, 1015 (6th Cir. 1999).   "Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint."  *Apple v. Glenn*, 183 F.3d 477, 478 (6th Cir. 1999). However, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."  *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 436–37 (1974)).   "[The] requirement that a plaintiff be given the opportunity to amend does not apply to *sua sponte* dismissals for lack of subject matter jurisdiction pursuant to *Hagans*."  *Id.*; *see also Hassink v. Mottl*, 47 F. App'x 753, 755 (6th Cir. 2002) (citing *Apple* and holding that district court properly dismissed a complaint *sua sponte* for lack of subject-matter jurisdiction where it lacked an arguable basis in law).

---

[2]   Rule 4(m) of the Federal Rules of Civil Procedure requires that a defendant be served with process within 90 days of the date the action is filed and provides that, in the absence of a showing of good cause by the plaintiff for why service has not been timely made, the Court "must dismiss" the action without prejudice.

19

As for the relief plaintiff seeks from this Court, plaintiff calls for McElroy's arrest "under a federal warrant and her and [his] children to be [extradited] back to Chattanooga, Tennessee, to answer to the criminal charges of Kidnapping, Breach of Agreement" [*Id.* at 3]. He also seeks $50,000 in punitive damages and $150,000 in compensatory damages from her [*Id.*].

While plaintiff's complaint is styled as a case proceeding under 42 U.S.C.§ 1983, there is no factual basis to support any such claim against McElroy [Doc. 1, p. 1]. As discussed *supra*, to state a claim under § 1983, a plaintiff must allege that he suffered a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). According to the complaint, McElroy is a private citizen with whom plaintiff shares children and a joint custody arrangement. Therefore, to the extent plaintiff asserts a § 1983 claim against McElroy, such claim is "totally implausible," cannot support a basis for subject-matter jurisdiction in this civil action and will be dismissed. *See Apple*, 183 F.3d at 478.

Additionally, plaintiff's complaint alleges McElroy has committed felonies which vest this Court with federal jurisdiction [*Id.* at 2–3].[3] To the extent plaintiff asks this Court to intervene and have McElroy arrested for kidnapping, "Breach of Agreement," or other crimes, neither this Court nor plaintiff as a private citizen has the authority to initiate a

---

[3] It does not appear that either federal question or diversity jurisdiction exists over any remaining claims against McElroy. The complaint does not allege McElroy's citizenship such that diversity jurisdiction might exist over any state law claims [Doc. 1]. Instead, it merely states that her address and employment are unknown, likely because she allegedly left Tennessee with their children [*Id.* at 1].

federal criminal prosecution for alleged unlawful acts [*Id.*]. *See Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004). Additionally, this Court lacks the authority grant the injunctive relief plaintiff requests, namely, that the Court issue a federal search warrant for McElroy and bring her back to Tennessee to answer for her alleged crimes. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."); *see also Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). In light of the above, any such claim is devoid of legal merit, cannot support a finding of subject-matter jurisdiction, and will be dismissed. *See Apple*, 183 F.3d at 478.

The only other claim alleged against McElroy is for "Breach of Agreement," which presumably relates to the joint custody agreement between plaintiff and McElroy [*Id.*]. Plaintiff's complaint only mentions "Breach of Agreement" once when it requests that McElroy be arrested "under a federal warrant [sic] to answer to the criminal charges of Kidnapping, Breach of Agreement" [*Id.* at 3]. Indeed, the complaint alleges only, in the context of the kidnapping claim, that McElroy fled the state with the children and blocked plaintiff's phone calls, and that plaintiff had believed they had joint custody order from a state juvenile court [*Id.* at 1–2]. No other facts are otherwise alleged that would support a claim for "Breach of Agreement." In particular, his complaint alleges no facts that would give rise to any breach of contract claim under state law or federal cause of action against McElroy. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court

21

cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted).

Even assuming "Breach of Agreement" constitutes a valid claim and either diversity or federal question jurisdiction exists, the Court both lacks the authority to provide plaintiff the relief he requests and jurisdiction under the "domestic relations exception," discussed *supra*. It appears that plaintiff may wish for this Court to interpret and enforce a joint custody agreement between plaintiff and McElroy by finding her in "breach" and ordering her arrest, the payment of compensatory and punitive damages to plaintiff, and the return of his children [*Id.*; Doc. 1-1, pp. 6–7]. However, plaintiff fails to cite to any legal authority, nor is the Court aware of any, that would enable the Court to provide the requested relief.

Further, a state juvenile court presumably has jurisdiction over their custody dispute and custody agreement, which appears to be dated and signed by a Hamilton County Juvenile Court magistrate judge [*Id.*]. *See Henson*, 2023 WL 3572839, at *2 (dismissing *sua sponte* plaintiff's federal claim because it concerned a child custody dispute). *Cf. Chevalier*, 803 F.3d at 798 ("Because none of the claims or remedies requires a federal court to . . . enforce [the defendant's] compliance with a related court order, [the plaintiff's] claims are not subject to the domestic-relations exception to federal diversity jurisdiction."). To award plaintiff relief related to the custody agreement would likely require the Court to apply state child custody law, interpret that agreement, and address the merits of plaintiff's child custody dispute with McElroy. But interference with a state court's child custody decree generally is not within the jurisdiction of the federal courts.

22

*Ankenbrandt*, 504 U.S. at 703; *Hughes v. Hamann*, 23 F. App'x 337, 338 (6th Cir. 2001). Rather, state courts have exclusive jurisdiction over these issues. *Ankenbrandt*, 504 U.S. at 703–04; *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995). Accordingly, any request by plaintiff that his children be returned to him, any request for relief that alters or otherwise impacts the state juvenile court and child custody proceedings (which appear to be ongoing), and any request for a decision from this Court regarding the enforcement of the child custody agreement falls within the domestic relations exception and cannot be heard by this Court.

In light of the above, since plaintiff asks the Court to take actions for which it lacks legal authority and jurisdiction, all claims against McElroy are devoid of merit and will be **DISMISSED**. *See Apple*, 183 F.3d at 479.

## V. Conclusion

For the reasons stated above, defendants' motions to dismiss [Docs. 7, 9, 11] are **GRANTED**. All claims against defendants CPS, East Ridge Police Department, and Magistrate Judge Gott are hereby **DISMISSED**. Additionally, all claims against McElroy are hereby **DISMISSED** for lack of subject-matter jurisdiction under Rule 12(b)(1). As a result, plaintiff's motion [Doc. 13] and Magistrate Judge Gott's motion to stay proceedings [Doc. 16] are **DENIED as moot**. This matter will be **DISMISSED**. A separate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE